645 So.2d 1244 (1994)
C.E. MORAN
v.
Douglas C. HARRIS and Continental Baking Company.
No. 93 CA 2226.
Court of Appeal of Louisiana, First Circuit.
November 10, 1994.
Writ Denied February 17, 1995.
*1245 Jerald P. Block, Thibodaux, and Curtis Gordon Gretna, for plaintiff-appellant.
Jason Lyons, Houma, for defendants-appellees.
William F. Kelly, Metairie, for intervenor-appellee, Prudential Property & Cas. Ins.
Before EDWARDS, SHORTESS and LeBLANC, JJ.
SHORTESS, Judge.
This appeal arises from a car accident on February 10, 1990. Cecil E. Moran (plaintiff) was struck from the rear by Douglas C. Harris (defendant) while waiting in traffic in Houma, Louisiana. Plaintiff sued Harris and his employer, Continental Baking Company, and its insurer, The Travelers Insurance Company (defendants).[1] A jury found the accident occurred and Harris was 100% at fault, but then found plaintiff's injuries were not caused by this accident. Plaintiff appealed, contending the jury verdict was erroneous.
The record shows the blow to plaintiff's vehicle was minor. Both vehicles were stopped in traffic waiting while a bridge opened to allow boats through the passage. Defendant was driving a step-van which apparently rolled forward into the bumper of plaintiff's pick up truck. At the time, plaintiff, a chiropractor, was on his way to a business meeting with another chiropractor, Dr. Richard Whitney. Plaintiff continued on to his meeting; however, Whitney testified he complained of back and neck pain immediately upon his arrival. Plaintiff saw Dr. Donald Judice, a neurosurgeon, five days after the accident. Judice's diagnosis at that time was cervical strain with a possible herniated lumbar disk. He ordered an MRI, which was performed February 19, 1990. The radiologist's reading of the MRI showed plaintiff had two herniated disks and a bulging disk in his neck, and a bulging disk in the lower back. Judice, who also interpreted the MRI, agreed with the radiologist's report. Judice testified his objective findings were muscle spasm in the neck on the right side, decreased reflexes in the front and sometimes the back of plaintiff's arm, muscle spasms in the low back, particularly on the right side, and diminished ankle reflex. These findings remained fairly constant. Judice testified that over time plaintiff complained of increased pain, but that plaintiff "stayed the same from a neurological standpoint." Judice recommended plaintiff have surgery on his neck and also recommended surgery on his lower back. Judice recommended plaintiff refrain from lifting over twenty pounds, carrying more than fifteen pounds, climbing ladders, doing any repetitive stair climbing, and sitting, standing or walking more than two hours without a break, operating heavy, vibrating machinery, and wearing heavy headgear.
Plaintiff testified that since the accident he has suffered constant pain. He continued his chiropractic practice until October 1990 but discontinued working after that time. His office staff testified that prior to the accident he was an energetic, enthusiastic, healthy, and hard-working individual. After the accident, he tired easily, took frequent breaks, *1246 complained of back pain, and was generally more grouchy and depressed. His staff and several of his colleagues testified plaintiff never complained of neck or back problems prior to the accident and to their knowledge had no previous history of neck or back problems.
Defendant showed a videotape of plaintiff which was filmed July 7, 1990, approximately four months after the accident. The video shows plaintiff performing work at a sewerage plant servicing a trailer park which plaintiff owned. In the video, plaintiff is lifting pipe, pulling equipment from a bent-over position, pushing, crouching, bending, stooping, and generally performing relatively heavy labor over approximately two hours. He is also shown moving his head and neck in all directions, including tilting his head backward to drink a soda.
Plaintiff contends the jury should have applied the presumption that when a person is in good health before an accident, but the disabling symptoms appear commencing with the accident and continuously manifest themselves, the disability is presumed to be the result of the accident. This is assuming there is a reasonable medical probability the injuries could have been caused by the accident. Housley v. Cerise, 579 So.2d 973 (La.1991); Arceneaux v. Howard, 633 So.2d 207 (La.App. 1st Cir.1993), writ denied, 634 So.2d 833 (La.1994).
Plaintiff's colleagues, friends, and staff testified he appeared to be strong and healthy prior to the accident, and no evidence showed otherwise. Dr. Pete Rhymes, an orthopedic surgeon, treated plaintiff in June 1987 for muscle tightness and swelling around the side of the head and neck after plaintiff was struck by a motor box, but Rhymes did not think this incident left any continuing neck problem.
Judice and Rhymes both testified that a small impact can herniate a disk. Judice stated he had seen significant herniations from something as simple as sneezing and, in one case, with no trauma at all. Furthermore, this court has stated previously that where medical experts and lay witnesses establish that a plaintiff sustained some injuries, the minimal force of the collision causing the injuries is of no material importance. Arceneaux, 633 So.2d at 210; Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir. 1981).
Nevertheless, the Housley presumption is a rebuttable presumption, and the causal link can be broken if the opposition successfully rebuts plaintiff's evidence.
No medical evidence was produced to rebut the lay testimony by plaintiff and his witnesses concerning his prior health. Defendant's primary rebuttal evidence was the surveillance videotape.
We are mindful that a videotape may show only brief intervals of the activities of the subject and may not show the aftereffects of the activities shown on the tape. Glover v. Southern Pipe & Supply Co., 408 So.2d 352, 356 (La.App. 4th Cir.1981), writ denied, 412 So.2d 86 (La.1982). However, the record shows the investigator who filmed the videotape testified and was subject to cross-examination. Plaintiff testified also and was subject to examination concerning his activities during the video, during any gaps, and afterward.
Plaintiff contended throughout the trial that he was so disabled by pain he could no longer practice as a chiropractor and was essentially destined to live a sedentary life. The videotape completely contradicts plaintiff's complaints of pain and inability to work. The video shows plaintiff violating every one of Judice's and Rhymes' restrictions without any indication he is experiencing any restricted movement, pain, or even discomfort. Several times plaintiff lifted or moved heavy objects. Plaintiff repeatedly stooped, bent down, and moved his neck in all directions and backward without any appearance of restricted movement, pain, or discomfort. When he was questioned about the activities shown on the video, plaintiff never indicated he experienced any pain as a result of doing continuous manual labor for approximately two hours.[2]
*1247 In light of the entire record, we cannot say the jury committed manifest error in completely discrediting plaintiff's testimony.
We can also see why a jury could reasonably discredit and reject the testimony of plaintiff's witnesses concerning his prior health and whether this accident was the cause of the present state of his neck and back.
Plaintiff's three office assistants testified on his behalf. All three are sisters, and plaintiff had an ongoing "amorous" relationship with one of them.
Whitney, the chiropractor with whom plaintiff met immediately following the accident and who gave plaintiff chiropractic treatments until August 1990, testified his bills for 32 visits totaled $3,200.00, but he did not intend to charge plaintiff anything if plaintiff failed to recover in the lawsuit.
Rhymes and Judice both stated their opinion as to the cause of plaintiff's injuries was based on the history provided by plaintiff. Rhymes testified he relies primarily on patient history in reaching the conclusion that a single traumatic event has caused a herniated disk. Judice testified it was possible plaintiff suffered a soft tissue injury and subsequent chiropractic manipulations brought on nerve impingement. Whitney testified that he manipulated plaintiff the day of the accident, February 13th, 14th, 15th, 16th, and 17th. Plaintiff's MRI was performed on the 19th.
The jury could reasonably have discredited plaintiff's testimony as unreliable based on the video and discredited his staff's testimony as biased and unreliable because of his personal relationship with one of them and their relationship to each other. Doctors Rhymes and Judice's opinion on causation was only as reliable as the patient history on which it was based. The doctors also provided alternative causes for plaintiff's injuries. Whitney had a financial interest in the outcome of the litigation.
The Louisiana Supreme Court has often stated:
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.
Lirette v. State Farm Ins. Co., 563 So.2d 850, 852-53 (La.1990).
Thus, we cannot say the jury committed manifest error in finding plaintiff's injuries were not caused by this accident. In light of the entire record, the jury's view was a permissible one. When two permissible views of the evidence exist the fact finder's choice between them cannot be clearly wrong. Stobart v. State, Dept. of Transp. & Dev., 617 So.2d 880, 883 (La.1993).
Plaintiff further contends the trial judge committed prejudicial error by unfairly restricting plaintiff's closing argument. During the trial, one of defendants' expert witnesses, Dr. Whitman McConnell, injured his achilles tendon and was unavailable to testify. Rather than postponing the trial several weeks, the defense decided not to call this witness. Defendants had referred to McConnell's testimony in opening statements. The court decided the defense would not be allowed to refer to McConnell's testimony in closing arguments and plaintiff would not be allowed to refer to the failure of the defense to call McConnell. The trial court declined to instruct the jury that a negative inference could be drawn from the defense's failure to call McConnell and instead instructed the jury as follows:
THE COURT:
Ladies and gentlemen, before we get into the closing arguments of the attorneys there is one matter that I feel that I must instruct you on. At the beginning of this trial I read out a list of witnesses to you. One of those names was a Dr. McConnell. During opening arguments by defense counsel he was referred to and his proposed testimony in great length and detail. And during the process of the early week *1248 there was several or many questions asked of various witnesses concerning potential testimony of Dr. McConnell. This is to inform you that Tuesday evening Dr. McConnell was in some type of accident, was rushed to surgery on Wednesday morning, and became unavailable to give testimony in this case. I am therefore, as I previously instructed you at the beginning of this trial I believe I mentioned to you that the argument of counsel is not evidence. The evidence comes from this witness stand. So I am now instructing you to totally disregard and not consider one way or the other any previous statements or representations made by any attorney in this case concerning Dr. McConnell and/or any testimony about him that was taken from this case. The fact is that Dr. McConnell has never testified and you are therefore to totally disregard his existence.
Plaintiff contends he should not have been restricted from drawing a negative inference in closing argument from McConnell's failure to testify and that the trial court should have given an instruction that there would be a presumption that the witness's testimony would have been unfavorable.
Generally, when a party fails to produce a witness who is available to him and gives no reasonable explanation, the presumption arises that the witness's testimony would have been unfavorable. Jones v. Trailor, 636 So.2d 1112 (La.App. 4th Cir.), writ denied, 642 So.2d 193 (La.1994). The trial court must consider all the facts and circumstances in the case in deciding whether the presumption will apply. Green v. Cement Products Servs., 526 So.2d 493 (La.App. 1st Cir.), writ denied, 531 So.2d 270 (La.1988).
The circumstances in this case were that the witness suffered an accident which resulted in emergency surgery and hospitalization. The trial court did not err in refusing to instruct the jury to draw negative inferences from the witness's failure to testify or in refusing to allow counsel to make negative inferences during closing statements. McConnell was not available to testify and his absence was fully and reasonably explained.
However, the jury did find Harris was 100% at fault in the accident; therefore, we amend the judgment to award plaintiff his property damage of $443.91. The judgment is affirmed in all other respects. Costs of this appeal are taxed to plaintiff.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Prudential Property & Casualty Insurance Company, plaintiff's insurer, intervened for $8,708.00 for medical bills paid on plaintiff's behalf. At trial it was stipulated that Prudential was entitled to recover if there was a judgment or settlement.
[2] Plaintiff suggested there are unexplained time gaps in the videotape, but did not state anything different happened during those gaps. Furthermore, the investigator testified no gap was for more than two minutes, except one nine-minute gap during which he was changing his location.