671 So.2d 1049 (1996)
Clifford BROWN, Plaintiff-Appellant,
v.
DIAMOND SHAMROCK, INC., Defendant-Appellee.
No. 95-1172.
Court of Appeal of Louisiana, Third Circuit.
March 20, 1996.
*1052 Gregory Karl Klein, Bernard Seymour Smith, Covington, for Clifford Brown.
William H. Parker, III, Lafayettee, for Diamond Shamrock, Inc.
Before PETERS, AMY, and SULLIVAN, JJ.
SULLIVAN, Judge.
This is a slip and fall personal injury case. Plaintiff-appellant, Clifford Brown, sued defendant-appellee, Diamond Shamrock, Incorporated, alleging that defendant was at fault for causing his injuries which resulted from his slip and fall in defendant's drive-through automatic car wash. The car wash in question is located on the premises of defendant's self-service gasoline station in Lafayette, Louisiana. Diamond Shamrock denied liability for Brown's injuries and, in defense of the action, asserted that Brown's injuries were caused solely through his own fault.
After the presentation of evidence at a jury trial, the jury returned a verdict in favor of Diamond Shamrock in which it determined that the condition of the premises did not present an unreasonable risk of harm to Brown. The trial court then rendered judgment, in accordance with this verdict, dismissing Brown's action.
From this judgment, Brown appeals and asserts that the trial court erred in the following respects:
(1) failing to instruct the jury on the concept of strict liability;
(2) failing to instruct the jury on the negative presumption arising from defendant's failure to produce relevant evidence (the accident report) in its possession;
(3) permitting defense counsel to cross-examine Cindy Angelle, defendant's former employee;
(4) permitting defense counsel to interrogate plaintiff concerning a prior unrelated claim;
(5) excluding photographs depicting the car wash as clean;
(6) [the jury's] finding that the defendant's car wash did not present an unreasonable risk of harm.
*1053 Brown contends that the first five errors assigned constitute legal errors on the part of the trial judge, which so tainted the jury's deliberation process that the manifest error/clearly wrong standard of review should not apply to the jury verdict. Instead, Brown urges that this court should review the record de novo and thereby render an independent decision based on the record before us.
For the reasons which follow, we conclude that the trial court did not commit any legal errors in the course of the trial which would require this court to apply a de novo standard of review to this case. Additionally, considering the entirety of the evidence, we find that the jury's determination that Diamond Shamrock's car wash did not present an unreasonable risk of harm is not manifestly erroneous or clearly wrong. Accordingly, we affirm the trial court's judgment dismissing Brown's suit against Diamond Shamrock.

FACTS
The accident occurred on the morning of August 11, 1993. It was unwitnessed. Brown, who lived near the Diamond Shamrock station, stated on direct examination that, on that day, he planned to visit a friend in a Lake Charles hospital. He put on a suit and went to the station in his 1983 Chevrolet Suburban to get fuel and to wash the vehicle. He had previously used the car wash to clean his 1988 Lincoln Continental, but he had yet to use it to wash his Suburban. After he filled up the Suburban's fuel tank, Brown drove it to the car wash entrance and deposited fifty cents into the fee collection box. He noticed an overhead warning sign hanging from the entrance of the car wash. The sign, which had three lines of print, read: "ENTRANCE" on the first line, "CARS, PICK-UPS & VANS" on the second line, and "5'6" CLEARANCE" on the third line. He explained that, because he had previously been through similar car wash facilities with the Suburban, he did not consider whether the Suburban was too tall to fit under the sign. As he drove forward, the sign contacted the top of the vehicle. He opened his driver's side door and got out of the Suburban to determine if any damage had been done. Brown stated that, as he stood on the concrete floor of the car wash, his feet slipped out from under him. His buttocks hit the floor, and he fell back against the Suburban's door and running board. He grabbed the door armrest and steering wheel to pull himself up, and, when he got to a half-standing position, his feet slipped again and he fell against the vehicle. Brown noticed an accumulation of algae on the floor and skid marks in the algae where he had slipped and fallen. His suit was also covered with algae.
He decided to drive the Suburban into the car wash and wash the vehicle. Afterwards, he informed Cindy Angelle, Diamond Shamrock's station manager, that he had fallen in the car wash. According to Brown, Angelle stated that they were shorthanded and that she had been telling her workers that the car wash needed cleaning. At the time, Brown did not think that he was hurt. At Angelle's direction, he filled out an accident report on which he stated that his fall did not cause any injuries.
Brown returned home to change clothes. He then departed as planned for Lake Charles. When he returned that evening, he was "really sore." He took his wife to view the car wash. She suggested that they take pictures of the condition of the car wash. They borrowed a Polaroid camera from a friend, bought film at a local Wal-Mart and took fifteen pictures of the car wash. According to Brown, his wife wrote the date on the bottom of one of the photographs. The fifteen pictures were introduced into evidence during the trial.
Brown stated, that as time passed, his pain worsened. He went to Dr. Edward Chauvin, a chiropractor, on August 18, 1993. He represented to Dr. Chauvin that he had neck, low back, right arm and leg pain with associated headaches. He claimed that he had not suffered from similar symptoms in the past. Dr. Chauvin treated Brown eleven times until his final visit on September 29, 1993.
During his treatment by Dr. Chauvin, Brown saw Dr. Charles Olivier, an orthopedic surgeon, once on August 24, 1993. He complained of the same symptoms to Dr. Olivier. He also denied any prior accidents or similar symptoms to Dr. Olivier.
*1054 He next was examined by Dr. Louis Blanda, his treating physician, for the first time on October 9, 1993. He complained of neck, low back, right arm and leg pain resulting from his fall in the car wash. Brown stated to Dr. Blanda that he had no prior problems with his neck or low back. Dr. Blanda initially performed diagnostic tests and determined that Brown had a herniated disc at C5-6 and a degenerative condition in his low back with a bulging disc at L5-S1. After conservative treatment, including pain and anti-inflammatory medication and physical therapy, was unsuccessful in relieving Brown's pain, Dr. Blanda recommended that Brown undergo cervical disc surgery. Brown stated that he is prepared to go forward with the recommended surgery.
On cross-examination, Brown stated that he stands approximately five feet, seven inches tall and that, every time he enters his Suburban, he notices that he is shorter in height than its door. He did not, however, think of this comparison as he entered the car wash because he had taken the Suburban through other car wash facilities without incident. He did not worry about the warning because the sign read "CARS, PICK-UPS & VANS," and he had previously owned vans which were taller than his Suburban. When he exited the vehicle, the car wash was not yet operating. He could not step on the Suburban's running boards because their brackets were broken. He admitted that nothing blocked his vision of the floor and the interior of the car wash. He did not look down as he stepped out of the Suburban.
Defense counsel then questioned him on the fact that, in the pictures allegedly taken by Brown's wife on the date of the accident, the sign's warning stripes appear faded as compared to the warning stripes in a set of pictures taken three weeks after the accident. Defense counsel directly accused Brown and his wife of not taking the pictures on the day of the accident but, instead, taking them on some day afterwards when the algae growth level in the car wash was particularly dangerous. Brown denied doing this.
Defense counsel also questioned Brown concerning his inability to recall similar symptoms and prior hospitalizations, particularly a January, 1977 five-day hospitalization for neck pain, when asked by his doctors to provide such information. This prior hospital stay, which resulted from an automobile accident, took place at Lake Charles Memorial Hospital. He did reveal to his doctors prior hernia and hemorrhoid problems and a lacerated lip which resulted from a work-related fall, all of which involved pain unrelated to the present injury. During the 1977 hospitalization at Lake Charles Memorial Hospital, he underwent numerous diagnostic tests, including a myelogram. Brown stated that, when he represented to his three doctors that he had not experienced similar symptoms, he had forgotten about his prior similar symptoms and hospitalizations. It was only after he began reading the medical records that he remembered the prior conditions and hospitalizations.
Defense counsel also asked Brown if he had ever made a claim for disabling injuries before this suit against Diamond Shamrock. He denied ever doing so. Defense counsel then presented him with a 1967 petition in a worker's compensation matter in which he alleged a disabling injury which caused secondary anxiety, neurosis, and a conversion reaction. Brown explained that, while working as a butcher, he was accidentally stabbed in the leg. He was out of work for only two weeks before he returned. His employer, however, refused to pay either sick leave or worker's compensation benefits for the period of his injury. He consulted an attorney, who drafted the subject petition and filed it against his employer. Although he signed the verification, Brown did not recall reading the substance of the petition and stated that the accident did not cause permanent disability. He merely wanted to be compensated for the two weeks of work that he had missed. Plaintiff's counsel objected to questioning concerning this prior claim. The trial judge overruled the objection, finding that the prior claim was appropriate for impeachment purposes.
Barbara Brown, plaintiff's wife, corroborated his version of the events which occurred on August 11, 1993. She stated that, when she was photographing the car wash *1055 facility, it had a "thick, brown, greenish slime" on the floor. The algae was evident throughout the car wash. In the weeks following his fall, Brown complained to her of pain in his shoulder, neck, right leg and low back. According to Barbara, he rarely complained of neck or back pain prior to the accident. She characterized his pain complaints as relatively constant. Brown must now take pain medication and sleep with a therapeutic support pillow to relieve the strain on his neck. Like her husband, she could not recall that he had spent five days in the hospital in 1977 for neck pain resulting from an automobile accident.
Plaintiff also called Cindy Angelle, Diamond Shamrock's former station manager. She stated that she began working for Diamond Shamrock in 1987. She resigned her position due to the long hours required and, at the time of trial, had been working for seven months as a pharmacy technician for Thrifty-Way Pharmacy. After leaving the employ of Diamond Shamrock, she maintained no relationship with the company.
Angelle stated that Diamond Shamrock's training program included a safety and operations manual. The person in charge of each shift was responsible for performing a "safety sweep" of the station's premises. Additionally, the employees were required to keep the car wash facility clean. She acknowledged that the company safety checklist stated: "[W]et car wash floors can become covered with algae. They should be powerwashed as needed." Diamond Shamrock provided a pressure cleaner, a hose and brushes for this purpose. On August 11, 1993, the pressure cleaner was either broken or at another Diamond Shamrock station in Lafayette.
According to Angelle, Brown reported to her that he slipped and fell as he got out of his vehicle to investigate the noise made when the warning sign hit the top of the vehicle. Brown said that he was not hurt. Angelle filled out an accident report which Brown signed. She then contacted her supervisor, who later came to the station and picked up the accident report. She stated that she has not seen the accident report since giving it to her supervisor. When she inspected the car wash that day, she saw no skid marks where Brown allegedly fell.
Angelle testified that the car wash facility had no warning sign ten or fifteen feet in front of its entrance and no sign informing customers of what measures to take in the event that their vehicles stall in the car wash or come into contact with the entrance warning sign. Also, Diamond Shamrock provided nothing to its customers to measure their vehicles and no electronic means of contacting a Diamond Shamrock employee should such an incident occur. She stated, however, that she would expect a person whose vehicle contacts the warning sign to back out of the car wash because the vehicle would obviously be too tall.
Dr. Blanda testified at trial. He stated that, on Brown's initial visit, Brown said that he had no prior neck or low back problems. Dr. Blanda's physical examination revealed cervical radiculopathy and nerve irritation in the neck and right arm. He also diagnosed possible lumbar radiculopathy from L4-5 into Brown's right leg. He recommended a magnetic resonance imaging (MRI) test and prescribed pain medication and physical therapy.
The MRI revealed a herniated disc at C5-6 and degenerative lumbar changes with a bulging disc at L5-S1, which could have been a minor herniation. Dr. Blanda found these findings to be consistent with Brown's pain complaints. He recommended conservative treatment initially. After Brown's first round of physical therapy, Dr. Blanda performed a myelogram which revealed a compressed nerve root at C5-6 and bulges at L2-3 and L5-S1. No evidence of lumbar nerve compression was indicated. These results were confirmed by a post-myelogram CT scan. Based on these objective findings, Dr. Blanda causally linked Brown's fall to his condition and pain complaints.
Dr. Blanda then referred Brown to Dr. Daniel Hodges, a physical medicine and rehabilitation specialist. Dr. Hodges placed Brown on an aggressive physical therapy regimen and prescribed pain medication. He also administered cortisone injections into Brown's shoulder region. When Brown did *1056 not respond well to this mode of treatment, Dr. Hodges recommended to Dr. Blanda that he consider performing surgery. Dr. Blanda stated that his surgeon's fee for an anterior cervical discectomy and fusion is $9,400. The hospital fee estimate is $8,000 for a three-day surgical stay.
Dr. Blanda stated that, if Brown's medical history is correct (that he had no right arm pain or numbness prior to the August 11, 1993 fall), then he would opine that, more probably than not, Brown's fall caused his cervical herniation. The fall caused the preexisting abnormalities to start producing pain.
On cross-examination, Dr. Blanda explained that an incorrect history can skew his opinion as to causation. He stated that, based on the Lake Charles Memorial Hospital medical records introduced, Brown's history as given to both Dr. Blanda and his physician's assistant was not truthful. He also conceded that all of Brown's lumbar symptoms can be explained by preexisting conditions.
Dr. Chauvin testified by deposition. He stated that Brown suffered from degenerative joint disease in the cervical region between C4 and C6 and in the lumbar region between L3 and L5. He characterized this condition as an osteoarthritic accelerated aging process which, in Brown's case, was probably caused by trauma which took place fifteen or twenty years before his treatment. Dr. Chauvin stated that, when he mentioned this to Brown, he did not recall any accidents which had occurred approximately fifteen to twenty years before. He did not perceive Brown's failure to report the prior symptoms as an indication of an intent to deceive. Dr. Chauvin did not consider Brown to be a malingerer or a symptom exaggerator. He stated that Brown's pain complaints could have been consistent with his fall in the car wash. He performed spinal manipulation in an effort to relieve Brown's pain during eleven visits from August 18 through September 29, 1993.
Dr. Olivier also testified by deposition. He stated that Brown did not disclose any prior accidents or injuries to him. Based on Brown's only visit of August 24, 1993, Dr. Olivier diagnosed cervical strain with preexisting cervical spondylosis and lumbar strain with preexisting lumbar degenerative changes. He stated that such strains usually resolve themselves in three months. He prescribed a muscle relaxant and anti-inflammatory medication. He also recommended that Brown undergo a MRI to determine if any disc involvement were present. The MRI was not performed until Brown went to see Dr. Blanda two months later.

LAW AND OPINION
The plaintiff specifies five legal errors allegedly committed by the trial judge, which he argues sufficiently tainted the jury's verdict such that the manifest error/clearly wrong standard of appellate review should not apply to the jury's determination. Brown argues that, because of these legal errors, this court should instead review the record de novo and grant no deference to the jury's verdict. In brief, Brown also asserts, without having specified as error, that the trial judge placed the specific jury interrogatories in the wrong order. He asserts that this action also constituted a legal error which rendered the jury's verdict infirm.
Rule 1-3 of the Uniform Rules, Courts of Appeal provides:
The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. Art. 5, Sec. 10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.
See also Trahan v. Gulf Insurance Co., 525 So.2d 1164 (La.App. 3 Cir.1988). Based on this rule, this court cannot address Brown's assertion concerning the order of jury interrogatories unless the interest of justice clearly requires us to do so. In the interest of justice and for purposes of dispensing with all of plaintiff's arguments on appeal, we shall address this issue along with those specifically assigned as error by Brown.

*1057 I.

JURY INTERROGATORIES
Brown contends that the trial judge erred in placing the jury interrogatory on unreasonable risk of harm before the interrogatory on cause-in-fact. He argues that, under the duty-risk analysis, cause-in-fact is the initial inquiry and should therefore be the subject of the first jury interrogatory. Brown asserts that the trial judge erred in failing to follow the "suggested order" of interrogatories given by the supreme court in Theriot v. Lasseigne, 93-2661 (La. 7/5/94); 640 So.2d 1305.
Our review of the Theriot case reveals no such suggestion that jury interrogatories be placed in a specific order and that the failure to do so constitutes legal error. The verdict form in the present case contained six questions, the initial two of which were worded as follows:
QUESTION NO. 1
Do you find that the car wash at Diamond Shamrock created an unreasonable risk of harm?
YES___ NO___
If your answer to Question No. 1 is "Yes", answer Question No. 2.
If your answer to Question No. 1 is "No", go no further. The jury foreperson should sign and date this verdict form and return it to the Court.
QUESTION NO. 2
Do you find that the unreasonable risk of harm created by the car wash was a cause of the injury to the plaintiff, Clifford Brown?
YES___ NO___
The jury answered "no" to the first question and, as instructed by the court, went no further.
The issue of whether the trial court erred in structuring the jury interrogatories is governed by La.Code Civ.P. art. 1812(A) which provides, in pertinent part:
The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue.
(Emphasis added.)
Insofar as Article 1812 governs special verdict forms, it clearly contemplates that the trial judge has discretion in the wording and the ordering of questions that are submitted to the jury. This is evidenced by the use of the permissive word "may," emphasized above.
In Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1153 (La.App. 3 Cir.1991), this court stated as follows:
If the trial court submits a verdict form to the jury with misleading or confusing interrogatories, just as when it omits to instruct the jury on any applicable essential legal principles, such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error. The manifest error standard of appellate review may not be ignored unless the proposed jury interrogatories are so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts. Lewis v. Wal-Mart Stores, Inc., 546 So.2d 267 (La.App. 3rd Cir.1989).
Our review of the jury interrogatories in the context of the applicable law and the facts adduced at trial reveals that they are not inadequate or incorrect such that they precluded the jury from reaching a verdict based solely on the law and the facts. The interrogatories are neither misleading nor confusing, and they fairly reflect the legal principles applicable to this case. Without the presence of an unreasonable risk of harm, Diamond Shamrock could not be held liable to Brown under the facts of this case. The trial judge did not abuse his discretion in *1058 placing the unreasonable risk of harm question before the cause-in-fact question.

II.

JURY INSTRUCTIONS
On appeal, Brown contends the trial court erred in failing to instruct the jury on (1) the principle of strict liability and (2) the negative or unfavorable presumption which arises upon the defendant's failure to produce relevant evidence (the original accident report) within its possession and control.
The trial judge must give instructions which properly reflect the law applicable to the facts of the particular case. To fulfill this duty, he must both require that the jury consider the correct law and, in giving the instructions, avoid confusing the jury. Guidry v. Bank of LaPlace, 94-1758 (La.App. 4 Cir. 9/15/95), 661 So.2d 1052; writs denied, 95-2498, 95-2490, 95-2477 (La. 1/5/96), 666 So.2d 295, 296. "Proper jury instructions are those which fairly and reasonably point up the issues presented by the pleadings and evidence and provide correct principles of law for the jury to apply to those issues." Crooks v. National Union Fire Insurance Co., 620 So.2d 421, 424 (La. App. 3 Cir.), writs denied, 629 So.2d 391, 392 (La.1993). "The adequacy of jury instructions must be determined in light of the jury instructions as a whole. The trial judge is under no obligation to give any specific jury instruction that may be submitted by either party; he must, however, correctly charge the jury." Doyle, 576 So.2d at 1152 (citations omitted). As an appellate court, we must exercise great restraint before overturning a jury verdict based on erroneous instructions. Iorio v. Grossie, 94-846 (La.App. 3 Cir. 10/4/95), 663 So.2d 366; Doyle, 576 So.2d 1143. With these well settled legal principles in mind, we shall evaluate Brown's claims concerning the jury instructions.

Strict Liability Instruction
Brown first asserts that, in addition to instructing the jury on La.R.S. 9:2800.6, the trial court should have instructed the jury on La.Civ.Code arts. 2316 and 2317 which deal with strict liability. The defendant counters that the plaintiff failed to properly assert the applicability of strict liability in his pleadings. Because we find merit in Diamond Shamrock's argument, we shall not address the merits of this assigned error.
The record reveals that, in his original petition, Brown alleged that Diamond Shamrock was negligent in failing to maintain the car wash in a safe condition, failing to reasonably inspect the car wash, failing to hire an adequate amount of personnel, failing to warn plaintiff of the hazardous condition of the car wash, and in other acts of negligence to be shown at trial. Therein, Brown made no allegation that Diamond Shamrock was strictly liable for his injuries. On February 21, 1995, approximately one month prior to the commencement of trial, plaintiff sought leave of court to file his first supplemental and amending petition in which he first asserted the strict liability of Diamond Shamrock. The defendant opposed Brown's motion for leave of court. On March 1, 1995, the trial court rendered and signed a judgment denying plaintiff's motion. Brown then applied to this court for supervisory writs from this ruling. This court, on March 17, 1995, denied Brown's writ application, finding no abuse of discretion in the trial court's ruling.
The procedural history explained above establishes that strict liability was not a principle of law applicable to the facts of this case. Stated another way, the jury was not called upon to decide whether Diamond Shamrock was strictly liable, as the custodian and guardian of the car wash, for Brown's injuries. The trial court's refusal to instruct the jury on the strict liability issue did not constitute error.

Negative or Unfavorable Presumption Instruction
The trial court denied Brown's request to instruct the jury on Diamond Shamrock's failure to produce the original accident report and the presumption that, given this failure to produce, such evidence would have been unfavorable to its cause. In support of his position, Brown cites the case of Rodriguez v. Northwestern National Insurance *1059 Co., 358 So.2d 1237 (La.1978). Diamond Shamrock counters that the report had been destroyed and that it did not hide anything from the jury. It asserts that, in conjunction with her testimony, Angelle referred to a typed report which was derived from the original handwritten accident report. Defendant argues that no prejudice has been shown since the plaintiff was allowed to state, from his recollection, the contents of the original accident report which were substantially similar to the contents of the typed report.
When a litigant fails to produce relevant evidence available to that party and gives no reasonable explanation for failing to do so, the presumption arises that the production of such evidence would have been unfavorable to that party's cause. Wilson v. U.S. Fire and Casualty Co., 593 So.2d 695 (La.App. 4 Cir.1991), writs denied, 597 So.2d 1027, 1037 (La.1992). "The trial court must consider all the facts and circumstances in the case in deciding whether the presumption will apply." Moran v. Harris, 93-2226 (La. App. 1 Cir. 11/10/94), 645 So.2d 1244, 1248, writ denied, 94-3046 (La. 2/17/95), 650 So.2d 253.
We find no error in the trial court's refusal to instruct the jury on the applicability of this presumption. Diamond Shamrock had a reasonable explanation for its inability to produce the evidence: it was destroyed. Given that the trial judge allowed both Angelle and Brown to testify as to the contents of the original handwritten accident report without having to enter the report into evidence, we do not perceive of any prejudice inuring against the plaintiff for the court's failure to instruct on this presumption. Viewing the instructions given as a whole, we conclude that the trial judge did not err in not charging the jury on this presumption.

III.

EVIDENTIARY RULINGS
Brown contends that the trial court committed legal error in (1) permitting defense counsel to cross-examine Diamond Shamrock's former employee, Angelle; (2) permitting defense counsel to question Brown concerning a prior worker's compensation claim; and (3) excluding photographs taken after the accident which depict the car wash as clean. When the jury verdict is tainted by the trial judge's erroneous evidentiary ruling, the appellate court should accord no weight to the trial court's judgment which implements the verdict. Thomas v. Missouri Pacific Railroad Co., 466 So.2d 1280 (La.1985); Martinez v. Schumpert Medical Center, 27,000 (La.App. 2 Cir. 5/10/95), 655 So.2d 649. Such a verdict is not entitled to the manifest error/clearly wrong standard of review. Instead, the verdict must be set aside, and the appellate court makes an independent or de novo review of the record and decides the case on the merits. Buckbee v. United Gas Pipe Line Co. Inc., 561 So.2d 76 (La.1990). We shall examine plaintiff's assigned errors in this regard with reference to these guiding legal principles.

Permitting the Cross-examination of Angelle by Defense Counsel
Plaintiff called Angelle to the stand. During the course of her testimony, plaintiff's counsel asked several leading questions. Defense counsel objected. Plaintiff's counsel argued that, as a former employee of Diamond Shamrock, Angelle was an adverse or hostile witness subject to cross-examination by the plaintiff. The trial judge sustained defendant's objection by ruling that a proper foundation had not been laid by plaintiff's counsel to adequately identify Angelle with Diamond Shamrock. Plaintiff's counsel continued with his questioning of Angelle, and afterwards, defense counsel was allowed to cross-examine her.
Plaintiff contends on appeal that allowing Angelle to be cross-examined by defense counsel was error. Defendant counters that the resolution of this assignment of error turns on the trial court's determination that plaintiff's counsel failed to lay a proper foundation to identify Angelle with Diamond Shamrock.
La.Code Evid. art. 611(B) provides:
Scope of cross-examination. A witness may be cross-examined on any matter relevant to any issue in the case, including *1060 credibility. However, in a civil case, when a party or person identified with a party has been called as a witness by an adverse party to testify only as to particular aspects of the case, the court shall limit the scope of cross-examination to matters testified to on direct examination, unless the interests of justice otherwise require.
(Emphasis added.)
Comment (d) to this Article states in pertinent part that "[t]he term `person identified with a party' includes a person who can be expected to be biased in favor of or sympathetic to another person." Additionally, La.Code Civ.P. art. 1634 provides: "A party or a person identified with a party may be called as a witness and examined by the adverse party in accordance with Louisiana Code of Evidence Articles 607 and 611."
The record indicates that Angelle established that she had formerly worked for Diamond Shamrock for approximately seven years. She quit her job with Diamond Shamrock in 1994 because of the demanding hours required by the company. At the time of trial, she was employed in another occupation with a drugstore. She stated that, since resigning from Diamond Shamrock, she has maintained no contact with the company. No evidence was adduced concerning any possible continuing loyalty or sympathy she has toward Diamond Shamrock. Additionally, the plaintiff showed no positive proof that Angelle could reasonably be expected to be biased in favor of Diamond Shamrock. Although proof of such continuing loyalty, sympathy, or bias may have indeed existed, plaintiff failed to establish such a relationship. As such, Brown failed to lay a proper factual foundation for a finding that Angelle was testifying as a "person identified with" Diamond Shamrock. For these reasons, the trial court did not err in permitting defense counsel to cross-examine Angelle.
Permitting Defense Counsel to Question Brown Concerning a Prior Worker's Compensation Claim
Under cross-examination by defense counsel, Brown denied ever having filed a claim for disabling injuries. Defense counsel then questioned him about his 1967 worker's compensation claim in which he alleged that, as a result of being accidentally stabbed at work, he suffered permanently disabling injuries. Plaintiff's counsel objected and asserted that the prejudicial effect of such information on the jury outweighed its relevance. The trial judge overruled the objection, reasoning that the prior claim was properly used for impeachment purposes.
On appeal, plaintiff contends again that the twenty-eight year-old claim had little probative value in relation to its prejudicial effect. In support of this argument, plaintiff cites the case of Daigle v. Coastal Marine, Inc., 482 So.2d 749 (La.App. 1 Cir.1985), writ granted in part on other grounds, 488 So.2d 679 (La.1986), in which the first circuit held that the use of prior claims requires a showing of fraud on the part of the plaintiff or a similarity in the accidents. Diamond Shamrock argues that the trial court ruling was correct and that the error, if any, was harmless since Brown was allowed to thoroughly explain the situation surrounding the prior claim and, in effect, to rehabilitate himself from the impeachment.
In Daigle, the defense counsel questioned plaintiff extensively about his seven prior back injuries and the money damages he claimed and recovered in each of his lawsuits. The court of appeal found that this was error because the evidence prejudiced the jury and "affected substantial rights of plaintiff." Id. at 751. There was no showing of fraud or similarity of injury except that each involved the back. We believe that the situation in this case is more analogous to that which occurred in the case of Ronquillo v. Belle Chase Marine Transportation, Inc., 629 So.2d 1359 (La.App. 4 Cir.1993). In that case, the fourth circuit, quoting from the case of Ewell v. Schwegmann Giant Super Markets, 499 So.2d 1192, 1195 (La.App. 5 Cir. 1986), held that "[E]vidence of prior injury and claims is admissible insofar as they bear upon any issue before the court, including credibility, and to establish whether the disability is causally related to the particular accident." Ronquillo, 629 So.2d at 1362 (emphasis added).
*1061 While the prejudicial effect of this evidence of a prior claim admittedly makes this issue close, we conclude that it was proper for the defense to use the evidence to impeach Brown's denial of ever having made a claim for disability. The evidence was relevant to his credibility. He was also able to explain his prior denial and the circumstances surrounding the prior claim. For these reasons, we conclude that the trial court did not err in allowing defense counsel to question Brown about his prior worker's compensation claim.

Excluding Photographs Depicting the Car Wash as Clean
The trial court did not allow the plaintiff to enter into evidence photographs taken after the accident which show that the car wash had been cleaned. Upon the objection of Diamond Shamrock, the trial court concluded that the pictures represented an inadmissible subsequent remedial measure. Plaintiff's counsel proffered the photographs into the record. On appeal, Brown contends that the photographs were introduced to impeach the testimony of Angelle, who stated that the car wash looked no different when clean than when dirty.
La.Code Evid. art. 407 provides:
In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This Article does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility.
"The prohibition against subsequent remedial measures evidence is designed to bring within the scope of the rule any change, repair or precaution subsequent to an accident." Richard v. Teague, 92-17 (La.App. 3 Cir. 5/4/94), 636 So.2d 1160, 1169, 21 writ denied, 94-1934 (La. 11/11/94), 644 So.2d 388, citing Northern Assurance Co. v. Louisiana Power & Light Co., 580 So.2d 351 (La.1991).
The photographs depict a change in the surface condition of the car wash which was made subsequent to plaintiff's accident. As such, this evidence falls squarely within the ambit of Article 407. We agree with the trial judge's reasoning, in addressing plaintiff's counsel, that the photographs go "to the core of remedial measures. When you show what could have been done and, in fact, later was. That's the core of remedial measures, that the law says you can't use.... [You] do not have the right to prove that the condition was alleviated."
The record indicates that Angelle was not asked to compare the condition of a clean floor with that of a dirty floor. When plaintiff's counsel asked her if she was present for the taking of the pictures at issue, defense counsel immediately objected to the introduction of the photographs. Plaintiff's counsel was not allowed to use the photographs. Therefore, since Angelle did not testify as represented by plaintiff, the photographs were not admissible to attack her credibility as an exception to the subsequent remedial measures rule. The trial court did not err in this regard.

IV.

UNREASONABLE RISK OF HARM
For his final assignment of error, Brown contends that the jury's determination that the car wash facility did not present an unreasonable risk of harm is manifestly erroneous. In order to reverse a factfinder's determination, this court must (1) find from the record that a reasonable factual basis does not exist for the trial court's finding, and (2) determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). We are bound to review the record in its entirety and resolve the issue of "not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." Id. at 882. Where there are two reasonable and conflicting views of the evidence, the factfinder's determination which is based on reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed *1062 on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In order to determine if the jury's determination is clearly wrong, we look to the legal principles which guided its determination concerning whether the car wash presented an unreasonable risk of harm. In Morell v. City of Breaux Bridge, 94-1378, p. 4-5 (La.App. 3 Cir. 5/31/95), 660 So.2d 882, 884, writ denied, 95-2608 (La. 1/12/96), 666 So.2d 321, this court reasoned as follows:
In the unreasonable risk of harm analysis, the utility of the thing is balanced not only against the likelihood and magnitude of the risk; also to be considered is "a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident."
. . . .
Whether a thing presents an unreasonable risk of harm is a matter particular to the circumstances of each case....
Additionally, in McBride v. Cracker Barrel Stores, Inc., 94-370, p. 4 (La.App. 3 Cir. 11/2/94), 649 So.2d 465, 467, we stated that:
The unreasonable risk of harm criterion is not to be applied mechanically, but rather serves as a guide for judges and juries in evaluating a certain condition and the risks it imposes. The court and/or the jury has a duty to balance the claims and interests of the parties, weigh the risks and the gravity of the harm, and consider as well the individual and societal rights and obligations. Therefore, a custodian will not be held responsible for every injury resulting from any risk, but only those injuries caused by unreasonable risks of harm to others.
(Citations omitted.)
The jury in the present case was presented with a great deal of evidence with which to balance the competing interests. Included amongst the evidence was a substantial amount of proof bearing on the credibility of Brown as a claimant. Since Diamond Shamrock did not present a defense but instead relied primarily upon its legitimate attacks on plaintiff's credibility during the presentation of his case in chief, the jury could have reasonably chosen not to believe the plaintiff's version of the events. Considering all of the circumstances, this credibility determination could reasonably serve as a basis for the conclusion that the car wash did not present an unreasonable risk of harm. After thoroughly reviewing the record, we conclude that the jury's conclusion was a reasonable one and not clearly wrong.

DECREE
For these reasons, we affirm the trial court's judgment rendered in favor of defendant-appellee, Diamond Shamrock, Incorporated, and against plaintiff-appellant, Clifford Brown. Costs of these proceedings are assessed to Clifford Brown.
AFFIRMED.