I,KUHN, J.
Claimant-appellant, Syvonne Edmondson, appeals a judgment rendered by the Office of Workers’ Compensation (OWC), which denied her request for supplemental earnings benefits (SEB) but awarded her a penalty of $2,000 and attorney fees in the amount of $1,500. Defendant-employer, PCA International/Ameri-ean Studios (PCA) answered the appeal. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
In April 1998, Edmondson injured her neck when she was taking down overheard photography equipment while working as a photographer for PCA. She had surgery to her neck and was paid indemnity benefits for the nine months she was unable to work. In August 1999, Edmondson returned to work for PCA in a limited duty capacity until December 2000, when she was laid off by her employer. In February 2001, Edmondson filed this disputed claim, averring entitlement to indemnity benefits as a result of the April 1998 injury.[1] On April 18, 2001, PCA filed an an *33 swer denying Edmondson’s claim. Edmondson amended her claim on April 26, 2001, and added Reliance Insurance Company (Reliance) as the workers’ compensation insurer of PCA.[2] PCA filed a motion to stay the proceeding, averring that insurer Reliance had. been declared insolvent, placed into liquidation, and by an order of the Commonwealth of Pennsylvania, all lawsuits |swere stayed. And on October 22, 2001, the workers’ compensation judge (WCJ) signed an order staying Edmondson’s claim.
On June 17, 2002, a hearing on the merits was held. The WCJ dismissed Edmondson’s request for SEB, but determined that Edmondson was entitled to a penalty of $2,000 and attorney fees of $1,500. Only PCA was cast in judgment for the penalty and attorney fees.
Edmondson appealed the denial of her claim for SEB; and PCA answered the appeal, challenging the imposition of the penalty and attorney fees.
DENIAL OF THE CLAIM FOR SEB
In reasons transcribed into the record, the WCJ determined that Edmondson was not entitled to SEB because she failed her burden of proving she was unable to earn 90% of her pre-injury wages, noting:
Edmondson offered the records of her physician, Dr. Guidry; however these records do not place any restrictions on Edmondson which would limit her em-ployability.
Entitlement to SEB is governed by La. R.S. 23:1221(3).[3] In order to recover |4SEB, a claimant must first prove by a preponderance of the evidence an inability to earn wages equal to 90 percent or more of the wages she earned before the accident. La. R.S. 23:1221(3)(a); Smith v. Louisiana Dep’t of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132. And it is only after such a showing that the burden of proof shifts to the employer who, if he wishes to contend that claimant is earning less than he is able to earn so as to defeat or reduce SEB, bears the burden of proving that claimant is physically able to perform a certain job and that the job was offered to claimant or the job was available to claimant in her or the employer’s community or reasonable geographic region. Id., 93-1305 at p. 5, 633 So.2d at 132-33.
On appeal, Edmondson’s primary complaint is that after she was laid off, PCA had “a duty to at least try vocational rehabilitation services.” But before any *34 duty to utilize rehabilitative services for job placement arises, Edmondson first had to prove that she was unable to earn 90 percent of her pre-accident wages as a result of her injury. And after reviewing the record, we find nothing to support a determination that Edmondson was in any way limited or restricted by her doctors from performing any work. Although the medical records of Dr. Guidry admitted into evidence show that on two occasions he prescribed physical therapy for Edmondson, that showing simply does not sustain her burden of proving an inability to earn 90 percent of her pre-accident wages due to the work-related injury as required under La. R.S. 23:1221(3)(a). Thus, the burden of proving a duty on the part of PCA to offer Edmondson vocational rehabilitative services never arose. Accordingly, lacking the requisite evidence to sustain a finding of | .¡inability to earn 90 percent of pre-injury wages due to an injury, the WCJ correctly denied Edmondson’s claim for SEB.
IMPOSITION OF PENALTY AND ATTORNEY FEES
The WCJ awarded Edmondson a penalty of $2,000 and attorney fees of $1,500. The judgment casts only PCA with liability for these awards. And in its answer to the appeal, without challenging the quantum awarded, PCA suggests that it was legal error for the WCJ to impute to it the actions or inactions of Reliance and/or LIGA[4] in failing to timely pay Edmondson’s medical claims. The WCJ’s transcribed reasons state:
PCA’s Workers’ Compensation carrier Reliance Insurance Company was declared insolvent [on] October 3rd, 2001. LIGA thereafter became involved and Vince Listi, the adjuster, was subpoenaed to appear for trial by Edmonson’s attorney to testify and produce the claim file. Listi failed to appear.
-!' * *
Edmondson testified she submitted various doctors’ bills and prescription invoices to the carrier/employer. She further testified these charges were directly related to her medical treatment in connection with her April 6, 1998, injury and that the invoices have yet to be paid. The adjuster could have presented himself to defend not paying these invoices but he did not. Therefore, the bills accepted into evidence are the responsibility of the Defendant.
Generally, when a party fails to produce a witness who is available to him and gives no reasonable explanation, the presumption arises that the witness’s testimony would have been unfavorable. Moran v. Harris, 93-2226, p. 8 (La.App. 1st Cir.11/10/94), 645 So.2d 1244, 1248, writ denied, 94-3046 (La.2/17/95), 650 So.2d 253. The WCJ must consider all the facts and circumstances 1 fiin the case in deciding whether the presumption will apply. See Moran, 93-2226 at p. 8, 645 So.2d at 1248.
Thus, based on the reasons set forth above, it is clear that the WCJ applied an adverse presumption against PCA for the failure of adjuster Listi to testify.
Louisiana Revised Statute 23:1201 sets forth the provisions for the imposition of a penalty and attorney fees in this case, providing in relevant portion:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
*35 F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers’ compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers’ compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
(3) Except as provided in Paragraph (4)of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
The only witness called to testify in this matter was Edmondson. She explained that prior to the January 1999 surgery, her doctor prescribed two [7medicines. And her paid receipts for prescriptions for two medicines, dated January 1999, were among the items admitted into evidence. Stating that she has yet to be reimbursed for the prescriptions, Edmondson testified that “they” refused to fill these prescriptions. She did not specifically distinguish between PCA or insurer Reliance. On cross-examination, PCA did not choose to elicit testimony from Edmondson to clarify the record and more clearly establish whether Edmondson was saying that it was the employer or the insurer who refused to fill the prescriptions. And Edmondson’s testimony does not explain why the refusal was made.
At the close of Edmondson’s case, PCA rested without offering any evidence whatsoever. Thus, the record is devoid of any evidence suggesting an explanation for the failure of adjuster Listi to testify.
 Awards of penalties and attorney fees in workers’ compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Williams v. Rush Masonry, Inc., 98-2271, p. 9 (La.6/29/99), 737 So.2d 41, 46. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Id.
Clearly, by the date of the hearing, PCA was aware of the January 1999 actions of its insurer and the status of its former employee. Mindful of the adverse presumption against Listi, that PCA offered no evidence attempting to controvert Edmondson’s testimony that her request for medicine in conjunction with her January 1999 neck surgery was not paid, and that the conclusions of the WCJ regarding the appropriateness of imposing penalties and attorney fees is a question |sof fact subject to the manifest error rule, see Authement v. Shappert Engineering, 2002-1631, p. 12 (La.2/25/03), 840 So.2d 1181, 1188-89, because the imposition of a penalty and attorney fees was reasonably based on the evidence and fair inferences from that evidence, we affirm the judgment.
*36 DECREE
For these reasons, the OWC judgment is affirmed. Appeal costs are assessed against claimant-appellant, Syvonne Edmondson.
AFFIRMED.

. Claimant alternatively pleaded entitlement to indemnity benefits based on permanent *33 total and temporary total disability, which was denied by the workers' compensation judge. That portion of the judgment has not been appealed.

. Although the file stamp date has the year "02” handwritten on it, the signed pleading is dated "4/23/01” by claimant’s attorney. And the OWC minutes indicate that the amended pleading was filed on April, 26, 2001.

. The relevant version of La. R.S. 23:1221(3) states, in part, that compensation shall be paid in accordance with the following schedule of payments including:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis....

. LIGA has not filed a pleading or otherwise made an appearance in this lawsuit, and nothing in this record establishes that LIGA has ever admitted it is liable for the claims of Reliance. See generally La. R.S. 22:1382.