McDonald, j.
| ¡¡Verna Veronica Byrd worked at DSM Elastomers Americas (DSM) as an assistant operator for $18.00 an hour. On May 22, 2002, as she went to clean excess rubber from the scale doors, the doors suddenly closed, catching her left hand, three fingers and her forearm. She was treated by numerous physicians and underwent several months of physical therapy.
Thereafter, she filed a disputed claim for compensation, asserting that wage benefits were terminated or reduced on March 18, 2003,[1] and that her disability status was “restricted duties.” DSM and Liberty Mutual Insurance Company (Liberty Mutual), DSM’s workers’ compensation insurer, answered the claim, admitting that Ms. Byrd sustained an injury on or about May 22, 2002, she was an employee of DSM at the time of the injury, and she was performing services arising out of and in the course of her employment at the time of her injury. DSM and Liberty Mutual asserted that they had paid workers’ compensation benefits to or on behalf of Ms. *1045 Byrd in the amount of $3,649.70 in indemnity benefits and $10,913.49 in medical expenses and that Ms. Byrd had received or was receiving all the benefits to which she was entitled by law. Thus, they denied liability for additional benefits. Alternatively, and only in the event that the defendants were held liable for additional compensation, the defendants asserted any and all rights to reduce benefits and medical expenses; any right to a credit for medical expenses and/or for wages earned by the claimant or which the claimant was capable of earning; any rights to have benefits forfeited; and any rights to claim reimbursement for or an offset against any compensation benefits for which they were held liable, to be paid from any settlement | ¡¡proceeds and/or proceeds pursuant to a judgment that Ms. Byrd might receive from a third party. The parties entered a stipulation prior to trial that the issues contested were the nature and extent of Ms. Byrd’s disability and her entitlement to indemnity benefits, penalties and attorney fees. There was no claim for medical benefits.
After a hearing, the workers’ compensation judge ruled in favor of Ms. Byrd and against the defendants, awarding supplemental earnings benefits from March 18, 2003, to date of judgment and continuing thereafter, based on an average weekly wage of $818.51, and subject to wages she had earned or was able to earn while working at Pelican State Credit Union and Convergís Corporation, together with legal interest and all costs of the proceedings; and awarding attorney fees in the amount of $6,000.00 based on the defendants’ arbitrary and capricious termination of her supplemental earnings benefits.
The defendants are appealing that judgment and make the following assignments of error:
1. The workers’ compensation judge committed manifest error in finding that Ms. Byrd proved she was unable to earn 90% of her pre-injury wage.
2. The workers’ compensation judge committed legal error in applying a presumption of causation to Ms. Byrd’s complaints of ulnar neuropathy, despite the testimony of her treating physician that such are unrelated to her work accident.
3. The [workers’ compensation judge] committed manifest error in finding that the termination of claimant’s supplemental earnings benefits was arbitrary and capricious and awarding attorney fees.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the defendants assert that the workers’ compensation judge committed manifest error in finding that Ms. Byrd proved she was unable to earn ninety percent of her pre-injury wage. In 14order to recover supplemental earnings benefits, a workers’ compensation claimant must prove by a preponderance of the evidence that a work-related injury has resulted in an inability to earn ninety percent or more of her average pre-injury wage. Tynes v. Gaylord Container Corp., 02-0519 (La.App. 1 Cir. 2/14/03), 844 So.2d 80, 86, writ denied, 03-0769 (La.5/9/03), 843 So.2d 404. It is only after such a showing that the burden shifts to the employer to show that the employee is earning less than she is capable of earning. Edmondson v. PCA International, American Studios, 02-1989 (La.App. 1 Cir. 7/2/03), 859 So.2d 31, 33.
The day after the accident, Ms. Byrd saw Dr. J. Simeca at the Occupational Health Clinic complaining of pain in her left hand and fingers. An examination showed swelling in her hand but no fractures. When she returned to Dr. Simeca on May 29, 2002, he diagnosed a contusion of *1046 her arm and hand and recommended she see an orthopedist and work at light duty. On May 30, 2002, Ms. Byrd saw Dr. Randall Lea, an orthopedist, who performed numerous tests. X-rays were negative for fractures and soft tissue swelling, and a bone scan was normal.
On June 3, 2002, Ms. Byrd saw another orthopedist, Dr. Robert Brennan, who diagnosed a left hand contusion. He recommended conservative treatment and physical therapy, and continued light duty work. Ms. Byrd began physical therapy on June 5, 2002, and was discharged from physical therapy in September of 2002, with substantial improvements in her strength and a significant decrease in pain. Dr. John Clark conducted EMG/Nerve Conduction studies on January 6, 2003, which yielded normal results. Dr. Brennan found that Ms. Byrd had reached maximum medical improvement (MMI) on January 13, 2003, pending an evaluation by a vascular surgeon. Dr. James W. McNeil performed such an evaluation on | ^February 20, 2003, and found no vascular injury. Dr. Lea released Ms. Byrd to full duty work on February 26, 2003, with no restrictions.
On March 7, 2003, Dr. Brennan found that Ms. Byrd’s hand was unchanged, showed good range of motion and was neurovascularly intact. Dr. Brennan instructed her to return as needed. Ms. Byrd saw Dr. Brennan again on March 17, 2003, and he found no change in her condition. Thereafter, in an April 7, 2003 letter to Ms. Byrd’s lawyer, Dr. Brennan stated, “the patient is at maximum medical improvement and can return to full duty work without limitation.” He further stated that she “will have no permanent impairment from this injury.” Ms. Byrd did not seek any further medical treatment until September 22, 2003, shortly after the hearing in this matter was continued, when she again saw Dr. Brennan, and he again found she could work at full duty.
Ms. Byrd was laid off from DSM on January 1, 2003. She was paid wage benefits from January 2, 2003, until March 18, 2003. She returned to working full time in February of 2003 and began attending graduate school full time at night. Her first job was at Pelican State Credit Union where she did collections work for $11.00 an hour. She quit that job in October of 2003 and moved to Houston to try to get a better job with the federal government. She did not get the government job, but began working for Convergís Corporation full time in December 2003 doing telephone technical support work for $11.06 an hour.
The workers’ compensation judge simply accepted Ms. Byrd’s testimony that she cannot earn ninety percent of her pre-injury wage while she was able to perform household tasks, work full time and attend graduate school full time, and all of her doctors had released her to full-duty work.
LA claimant’s testimony that she is no longer able to return to her pre-injury employment, without more, is insufficient to prove entitlement to supplemental earnings benefits. Cannedy v. Yarborough, 02-0728 (La.App. 1 Cir. 6/27/03), 858 So.2d 504, 507. After a thorough review of the record, we find that the workers’ compensation judge’s determination that Ms. Byrd proved that she could not earn ninety percent or more of her pre-injury wage is manifestly erroneous, and we reverse the award of supplemental earnings benefits.[2]
*1047 ASSIGNMENT OF ERROR NO. 3
In this assignment of error, the defendants assert that the workers’ compensation judge committed manifest error in finding that the termination of claimant’s supplemental earnings benefits was arbitrary and capricious and erred in awarding attorney fees. The burden of proof is on the claimant to establish that the insurer’s conduct was arbitrary and capricious in discontinuing the payment of benefits. See former La. R.S. 23:1201.2.[3]
Having found that the workers’ compensation judge erred in finding Ms. Byrd was entitled to supplemental earnings benefits, we likewise find that the workers’ compensation judge erred in finding that the defendants were arbitrary and capricious in terminating supplemental earnings benefits, and we reverse the attorney fees award of $6,000.
DECREE
For the foregoing reasons, we reverse the judgment of the Office of Workers’ Compensation Administration and render judgment in favor of 17defendants, DSM and Liberty Mutual. Costs of this appeal are assessed against Ms. Byrd.
REVERSED.
PARpRO, J., concurs.
HUGHES, J., dissents.

. Ms. Byrd’s claim for disputed compensation asserted that her wage benefits were terminated on January 2, 2003, but at trial the parties stipulated that they were actually terminated on March 18, 2003.

. We pretermit discussion of assignment of error number 2 in light of the conclusion reached in assignment of error number 1.

. Acts 2003, No. 1204 § 2 repealed La. R.S. 23:1201.2, which related to discontinuance of payment and allowance of attorney fees for discontinuance. See, now, La. R.S. 23:1201(F), (I), and (J).