814 So.2d 747 (2002)
James Keith BROWN, et al.
v.
TRINITY UNIVERSAL INSURANCE CO., et al.
Patricia Brown, et al.
v.
Mark F. Beslin, et al.
No. 01-1405.
Court of Appeal of Louisiana, Third Circuit.
April 3, 2002.
Rehearing Denied May 15, 2002.
*748 Michael W. Robinson, Pucheu, Pucheu & Robinson, Eunice, LA, for Plaintiffs/Appellants: James Keith Brown.
David R. Rabalais, Rabalais & Purser, Lafayette, LA, for Defendants/Appellees: Trinity Universal Insurance Company, Jennifer Beslin.
Court composed of JOHN D. SAUNDERS, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
James Brown appeals the trial court's dismissal of his claims for injuries he sustained in an automobile accident on December 23, 1997. For the following reasons, we reverse.

Facts
Mr. Brown was involved in two automobile accidents within a seven and one-half month period. The first accident occurred on May 7, 1997; the second accident occurred on December 23, 1997. The first accident was a head-on collision; the second accident was a rear-end collision. The second accident occurred when a car driven by Jennifer Beslin and insured by Trinity Universal Insurance Company hit the rear of a Chevrolet Blazer driven by Barbara Leger. The Blazer was propelled forward, causing it to collide with the rear of the Plymouth Voyager driven by Mr. Brown. In turn, Mr. Brown's van was propelled forward into the vehicle in front of him. Mr. and Mrs. Brown testified that the vehicle in front of them did not remain at the scene for investigation by the police. All of these vehicles were stopped at a red light.
Following the May 7, 1997 accident, Mr. Brown sought treatment with Dr. Louis Blanda, orthopedic surgeon, for complaints of pain in his neck and lower back. An MRI revealed small disc herniations at C4-5 and C5-6 without definite nerve root compression, a definite focal herniation at L5-S1 with some left-sided nerve compression, and a smaller disc bulge at L4-5. Dr. Blanda instituted conservative treatment for Mr. Brown's injuries, ordering a course of physical therapy. On December 8, 1997, Dr. Blanda wrote to MetLife Insurance *749 Company that Mr. Brown could probably be released to work with some modifications. However, he returned to see Dr. Blanda on December 23, 1997 and Dr. Blanda noted that he continued to have neck and back pain and that the relief he obtained from physical therapy seemed to have plateaued. Specifically, he noted that Mr. Brown was "not well enough to return back to work." A myelogram and CAT scan were recommended by Dr. Blanda. Mr. Brown claims that Dr. Blanda released him to return to work on December 23; however, he did not produce a return to work release at trial.
Dr. Blanda's observations in his December 23, 1997 notes are confirmed by Mr. Brown's physical therapist who informed Dr. Blanda by correspondence dated December 22, 1997, that Mr. Brown had made little functional progress during his twenty-nine treatments, noting that pain limited his forward trunk flexion and his ability to perform functional activities.
Mr. Brown's first visit to Dr. Blanda following the December 23, 1997 accident was on January 29, 1998. Dr. Blanda's notes indicate that Mr. Brown complained of increased neck and back pain as a result of the December 23, 1997 accident. He noted that Mr. Brown described a "flare up" of his pre-existing neck complaints. Mr. Brown had new complaints of pain in the mid-scapular region with associated occipital frontal and temporal headaches. Dr. Blanda ordered a cervical and lumbar MRI performed following this visit. He reviewed the studies, noting that the cervical studies looked better than Mr. Brown's previous tests and that Mr. Brown's lumbar herniations had worsened. On September 23, 1998, Mr. Brown underwent a microlaminectomy discectomy at L5-S1.
Dr. Blanda was deposed regarding his treatment of Mr. Brown. He summarized the effect of the December 23, 1997 accident on Mr. Brown as causing a flare-up of pain in his neck and a recurrence of testicular pain; his back and leg pain and numbness appeared to be about the same. He opined that he did not believe that the surgery he ultimately performed on Mr. Brown's back was related to the December 23, 1997 accident. However, when questioned by counsel for Mr. Brown he did agree that Mr. Brown may be the only person who knows the answer to the question of whether the second accident contributed to his request for surgery.
This matter was tried before the trial court on May 21, 2001. The parties stipulated to Trinity's liability for the accident and that Mr. Brown's damages were less than $50,000.00. The issue presented to the trial court was the nature and extent of Mr. Brown's injuries, as well as his damages, resulting from the December 23, 1997 accident. At the conclusion of the trial, the trial court rendered judgment in favor of Mr. Brown, awarding medical expenses in the amount of $33,852.01 and $16,147.98 in general damages. Thereafter, on its own motion, the trial court vacated its judgment, finding that the damage to Mr. Brown's vehicle was minimal and not severe enough to exacerbate Mr. Brown's injuries from his May 7, 1997 accident. Judgment was rendered in favor of Defendants, dismissing Mr. Brown's claims at his cost.

Standard of Review
A trial court's finding of fact cannot be reversed unless it is clearly wrong or manifestly erroneous. Stobart v. State of Louisiana, Through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). On appeal, we must review the record in its entirety, keeping in mind that "[i]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, [we] may not reverse, even though convinced that had [we] been sitting as the *750 trier of fact, [we] would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990).

Discussion
The trial court reversed its original decision on the basis of the physical evidence of the force of impact between the Chevrolet Blazer and Mr. Brown's van, describing the damage to the van as:
[A] very slight dent in the left rear portion of plaintiffs van causing $350 of property damage. The photographs show the dent on plaintiff's bumper to be about the size of one's thumb, and plaintiff claims that this sent him colliding with a truck in front of him, who promptly left the scene of the accident.
The trial court rejected Mr. Brown's proof that his vehicle was pushed forward into the vehicle in front of him, stating:
Plaintiff produced no photographs of the front of his vehicle or any other evidence, other than his own and his wife's testimony and the property damage estimate, that he had a collision that involved the front of his vehicle as well.
(Emphasis added).
The property damage estimate referenced by the trial court was prepared by Trinity, not a party selected by Mr. Brown. The estimate identifies the points of impact as the rear and front bumpers of Mr. Brown's van and states, "[t]here was damage to the front bumper." Photographs of property damage are not required to prove that property was actually damaged. Trinity's own evidence, its estimate which it introduced into evidence, identified the damage to Mr. Brown's van. If there was no estimate of the damage to Mr. Brown's van in the record, we would feel compelled to accept the trial court's finding that there was no damage to the front bumper of his van as a credibility judgment of Mr. and Mrs. Brown. However, under these facts, we find the trial court's conclusion that Mr. Brown did not prove that the front bumper of his van was damaged unreasonable.
Ultimately, the trial court concluded that the impact did not cause Mr. Brown's injury, stating:
There is no way that this very minor impact caused plaintiff's medical problems which resulted in his surgery of September 23, 1998. His progression through this injury resulted in surgery, but the accident of 12/23/97 was not an intervening cause or a factor in his treatment or condition.
While the force of a collision may be considered in determining whether a person was injured in an accident and the extent of any injuries sustained, it should not be the only factor considered when making such a determination. See, e.g., Davis v. Martel, 00-1727 (La.App. 3 Cir. 7/18/01); 790 So.2d 767, writ denied, 01-2399 (La.11/21/01); 801 So.2d 1087; Starnes v. Caddo Parish Sch. Bd., 598 So.2d 472 (La.App. 2 Cir.1992).
In Seegers v. State Farm Mutual Automobile Insurance Co., 188 So.2d 166, 167 (La.App. 2 Cir.1966), the court considered the issue presented herein:
It is strenuously urged that the force of the impact was so slight it could not have caused injuries of the nature and extent complained of by the plaintiff, Mrs. Seegers. This argument, in part, is based upon the evidence in the record to the effect that the only damage to the rear of the Seegers automobile was the breaking of the tailpipe bracket and a small dent in the rear bumper requiring a cost of repair of only $8.88. While it is indisputably true that the impact was slight, we think it would be a dangerous precedent to attempt to measure the *751 degree of injuries in direct proportion to the force of a collision. The testimony of both the medical experts and the lay witnesses established the fact that Mrs. Seegers did sustain some injuries and the minimal force of the collision is, therefore, of no material importance.
We find merit to this conclusion as did the panel in Davis, 790 So.2d 767. Based on the evidence herein, we agree with the trial court's conclusion that the December 23, 1997 accident did not contribute to Mr. Brown's need for surgery. However, we do find error with its conclusion that the accident was not "a factor in his treatment or condition." At the time of his December 23, 1997 visit, there is no indication that a return appointment for January 29, 1998, was scheduled for Mr. Brown. The myelogram and CAT scan recommended on December 23, 1997 had not been performed. These facts indicate that the January 29, 1998 appointment was not a follow-up to the December 23, 1997 appointment. On January 29, 1998, Dr. Blanda recommended a cervical and lumbar MRI, as opposed to the myelogram and CAT scan he recommended on December 23, 1997, "to rule out worsening or new disk herniation or nerve root compression." Those tests were performed and Mr. Brown returned to Dr. Blanda for the findings of those tests on March 5, 1998. While the test results revealed that there was no worsening of Mr. Brown's lumbar disc herniations and his cervical studies actually looked better than a prior study, that is not proof that Mr. Brown's pain did not increase following the accident. Dr. Blanda ordered additional conservative treatment at a pain clinic. Apparently, the pain clinic did not achieve the hoped for results, and Mr. Brown returned to Dr. Blanda in May at which time surgery was recommended.
We find that Mr. Brown's January 29, 1998 and March 5, 1998 appointments with Dr. Blanda were due to the flare-up of pain he suffered following the December 23, 1997 accident. Additionally, we find that the cervical and lumber MRI was ordered by Dr. Blanda for that same reason. Accordingly, we award Mr. Brown $3,246.00 in medical expenses and $7,500.00 in general damages for the flare-up of pain in his neck and testicles, the pain in his mid-scapular region, and his occipital headaches.
Mr. Brown argues that his condition worsened after the December 23, 1997 accident, such that he underwent surgery to relieve the pain. The evidence is equivocal on this issue. Dr. Blanda testified that he did not believe that the December 23, 1997 accident contributed to the decision for surgery. While he agreed with Mr. Brown's counsel that only Mr. Brown knew for fact whether it did or not, we find Dr. Blanda's assessment of the situation more objective and accept his opinion.

Decree
The judgment of the trial court is reversed. Judgment is awarded in favor of James Brown and against Trinity Universal Insurance Company in the amount of $3,246.00 in medical expenses and $7,500.00 in general damages. All costs of this matter are assessed to Trinity.
REVERSED AND RENDERED.