NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-866

ROBERT C. JORDAN

VERSUS

ZOIE R. VICE, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 100,324-E
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Glenn B. Gremillion, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

Brad J. Brumfield
Smith & Brumfield, L.L.C.
7576 Goodwood Blvd.
Baton Rouge, LA 70806
Counsel for Defendant-Appellant:
    Allstate Insurance Company

Harold G. Toscano
Attorney at Law
One Lakeshore Dr., Suite 1710
Lake Charles, LA 70629
Counsel for Defendant-Appellant
    Allstate Insurance Company

David Groner
Attorney at Law
P.O. Box 9206

**New Iberia, LA 70506**
**Counsel for Plaintiff-Appellee:**
    **Robert C. Jordan**

**PAINTER, Judge.**

Defendant, Allstate Insurance Company (Allstate), appeals a jury verdict awarding Plaintiff, Robert C. Jordan (Jordan), damages for injuries sustained in a motor vehicle accident. For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 13, 2002, Jordan was driving his vehicle on Duperier Street in New Iberia, Louisiana, when he was involved in a collision with a vehicle driven by Zoie Vice (Vice). Vice was insured by Allstate. Jordan filed suit against Vice and Allstate. The parties stipulated that Vice was solely at fault in causing the accident and that Jordan was free from any and all fault with respect to the collision. The parties further stipulated that Jordan injured his left knee and lower back in the accident, that he also suffered numbness to his left toe as a result of injuries sustained in the accident, and that his medical bills for said injuries totaled $589.00. Jordan contended that he also suffered a right shoulder dislocation requiring surgical repair; however, Allstate contended that this injury was not caused by the subject accident.

The matter proceeded to trial by jury and resulted in a verdict in Jordan's favor. The jury found that Jordan's shoulder injury was "in fact caused or aggravated by the accident." The jury went on to award a total of $90,055.75 in damages to Jordan. That amount included $22,555.75 for medical expenses; $40,000.00 for present, past, and future pain and suffering; $25,000.00 for present, past, and future mental anguish; and $2,500.00 for loss of enjoyment of life. Allstate now appeals to this court, asserting that the trial court incorrectly instructed the jury with respect to the application of the presumption that an accident caused an injury. Allstate further contends that, because of this incorrect instruction, the jury was prevented from dispensing justice. Allstate also asserts that the jury award was excessive.

1

*Jury Instructions*

The trial court gave the following instruction, commonly referred to as the

*Housley* presumption,[1] to the jury:

> If you find that the plaintiff was in good health before the accident, but after the accident plaintiff had an injury, and that there is a reasonable possibility that the accident caused the injury, the law presumes that the accident caused the injury.

Allstate timely objected to the wording of this instruction. Allstate's contention was

that the instruction, as given by the trial court, omitted pertinent language to the effect

that *Housley* imposes a requirement that the symptoms must appear shortly after the

accident and continuously manifest themselves. The Louisiana Supreme Court in

*Housley*, 579 So.2d at 980, quoted the following language from *Lucas v. Insurance*

*Company of North America*, 342 So.2d 591, 596 (La.1977):

> A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

Allstate contends that the jury's verdict was erroneous and must be set aside because

the jury was not advised that the presumption only applied if Jordan's shoulder

complaints continuously manifested themselves following the accident and if medical

evidence demonstrated a reasonable possibility of a causal connection between the

accident and the shoulder complaint. We disagree.

> A trial court should give all requested instructions that correctly state the law, provided that they are material and relevant to the litigation. Courts are not obligated to give the specific jury instructions submitted by the parties, but omission of a requested instruction containing an essential legal principal [sic] may constitute reversible

---

[1]From *Housley v. Cerise*, 579 So.2d 973 (La.1991).

2

error. A court has fulfilled its duty if its instructions fairly and reasonably point out the issues presented by the pleadings and evidence and provide the principles of law necessary to resolve those issues.

An appellate court must exercise great restraint before overturning a jury verdict on the basis of erroneous instructions. Consequently, we will overturn the jury's verdict in the case *sub judice* on the basis of such an error only if the instructions, taken as a whole, were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the relevant law and facts. Ultimately, the pertinent inquiry is whether the jury was misled to such an extent as to be prevented from doing justice.

*Square v. LeBlanc*, 04-1500, p. 10 (La.App. 3 Cir. 6/1/05), 903 So.2d 1178, 1185, *writ denied*, 05-1746 (La. 1/13/06), 920 So.2d 240 (quoting *Mathews v. Dousay*, 96-858, p. 8 (La.App. 3 Cir. 1/15/97), 689 So.2d 503, 509-10), (alteration in original).

As prior courts have recognized,

The presumption of causation relied on by the supreme court in *Housley* was not an original jurisprudential development. In fact, this presumption had first been fashioned by the supreme court some twenty-three years prior in *Bertrand v. Coal Operators Casualty Co.*, 253 La. 1115, 221 So.2d 816, 827 (1968) (on rehearing). Additionally, the same presumption was relied on in *Johnson v. Travelers Insurance Co.*, 284 So.2d 888 (La.1973) and in *Lucas* [*v. Ins. Co. of N. Am.*, 342 So.2d 591 (La.1977)]. However, each of these cases arose in the context of a worker's compensation claim. *Housley*, then, represents an extension of this presumption into the realm of general delictual actions.

*Juneau v. Strawmyer*, 94-903, p. 5 (La.App. 4 Cir. 12/15/94), 647 So.2d 1294, 1298.

Even prior to *Housley*, this court applied the presumption outside the context of workers' compensation and noted that "in order for the presumption to apply, the plaintiff must prove that she was in good health prior to the accident and that there is a causal relationship between the accident and the condition." *Heath v. Northgate Mall, Inc.*, 398 So.2d 132, 134 (La.App. 3 Cir. 1981).

What is important is that the charge, as a whole, reflects the requirements of *Housley*: (1) that the plaintiff was in good health prior to the accident; (2) that there is a temporal connection between a defendant's conduct and the manifestation of a plaintiff's condition; and (3) that there is evidence, either medical, circumstantial, or

3

common knowledge, of a reasonable possibility of causation between the accident and the claimed injury. *See Juneau*, 647 So.2d 1294.

In this case, the trial court instructed the jury as indicated above and also told the jury:

> A required element of the plaintiff's case, under any theory of law, is that the plaintiff's damages be caused by the defendant. The defendant is the legal cause of plaintiff's damages if the conduct of the defendant is the cause in fact of those damages.
>
> To be a cause in fact, the conduct of the defendant must be a substantial factor in causing damage.

Based on the entirety of the instructions given to the jury, we cannot say that the jury was misled to such an extent as to be prevented from doing justice.

Even though Jordan refused medical assistance at the scene of the accident, he testified that, a couple of days after the accident, he was trying to get an appointment with Dr. W. Stanley Foster, who had diagnosed Jordan with congenital spondylolysis in 1999. Jordan, who was nineteen years old at the time of the accident, testified that his back hurt, that his left knee was turning purple and swelling, and that he felt immediate pain in his shoulder which led to his shoulder being sore and limited in motion for some time after the accident. Jordan further testified that his back was his main concern since he had previous spinal surgery to repair the congenital spondylolysis when he was sixteen years old. Following that surgery, which required a fusion and the placement of screws, he returned to playing sports in high school.

Jordan first saw Dr. Foster in connection with the subject accident on April 18, 2002, and complained of back and knee pain. He returned to Dr. Foster on May 9, 2002, and complained of his right big toe being numb. Dr. Foster then referred Jordan to Dr. David S. Muldowny, who diagnosed a lumbar sprain status-post spondylolysis repair. Jordan did not return to Dr. Foster until September 25, 2003,

4

at which time he complained of shoulder instability. He also told Dr. Foster that he had injured his shoulder some nine years prior while skiing. At trial, Jordan testified that following the accident, the soreness in his shoulder went away after a while but that he had some episodes where he would wake up in the morning, maybe twice a month, with a sore shoulder. Then, that continued to the point where he would wake up with his shoulder out of socket, and the situation got progressively worse. Jordan testified that he did not have any injuries to his shoulder after the accident but before September 25, 2003. Dr. Foster testified that, according to patient history, Jordan's shoulder started dislocating about three months after the accident. According to Dr. Foster, on September 25, 2003, Jordan still had mild muscle spasms in his back and had a positive apprehension test in his right shoulder. Dr. Foster referred Jordan to Dr. John P. Schutte, who examined Jordan and ordered an MRI of the shoulder. The MRI showed a Hill-Sachs lesion, which Dr. Schutte testified was caused by trauma. Dr. Schutte ultimately performed surgery to reconstruct Jordan's right shoulder on October 22, 2003.

The finding of the temporal element is a factual finding that we cannot disturb absent manifest error. *Mart v. Hill*, 505 So.2d 1120 (La.1987). The record in this case supports a temporal connection between the accident and the shoulder complaints, thus, we must give due deference to the jury's finding of fact that Jordan's shoulder injury was, in fact, caused or aggravated by the accident. Allstate's argument that there is a lack of continuous complaints of shoulder pain following the accident because Jordan did not seek medical treatment until some seventeen months after the accident, and only when his shoulder separated after climbing out of a boat, is without merit. "[F]ailure to seek medical treatment for several months does not preclude the possibility that [the plaintiff] was, in fact, injured, and in pain." *Poland*

5

*v. State Farm Mut. Auto. Ins. Co.*, 03-1417, p. 12 (La.App. 1 Cir. 6/25/03), 885 So.2d 1144, 1150-51. In sum, we find that Jordan was entitled to the *Housley* presumption because there was no evidence that he was not in good health prior to the automobile accident of April 13, 2002; there was a temporal relationship between the accident and the shoulder complaints; and there was evidence of a reasonable possibility of causation between the accident and the shoulder injury. Further, we find no error in the trial court's instruction. There is, therefore, no manifest error in the jury's finding as to causation, and the judgment is affirmed in that respect.

*Damages*

Allstate argues that the jury's award of damages is excessive. The parties stipulated that Jordan's medical expenses with respect to the treatment of the knee, low back, and great toe totaled $589.06. Medical expenses with respect to treatment of the shoulder injury totaled $22,555.75. General damages awarded by the jury totaled $67, 500.00. If there is no causal connection between the accident and the shoulder injury, Allstate argues that Jordan is not entitled to the $22,555.75 and that $67,500.00 in general damages is excessive. We have already found that the jury's finding of a causal connection between the accident and Jordan's shoulder injury is supported by the record and not manifestly erroneous, therefore we find no merit in this argument.

Allstate also argues that, even if the shoulder injury is related to the accident, the evidence does not support a $67,500.00 general damage award. Allstate argues that the highest possible award for Jordan's back, knee, and toe injury is $8,500.00 and the highest possible award for Jordan's shoulder injury is $40,000.00. We disagree.

6

Our review of a jury's general damage award is guided by *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). In *Andrus v. State Farm Mutual Automobile Insurance Company*, 95-0801, p. 8 (La. 3/22/96), 670 So.2d 1206, 1210, our supreme court stated:

> In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. *Reck v. Stevens*, 373 So.2d 498 (La.1979). The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. *Id.* Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).

> Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, *in either direction*, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. *Id.*

Jordan testified that he injured his back, left knee, left big toe, and right shoulder in the subject accident. His right shoulder required surgical repair which left him with a scar. When he returned to Dr. Foster in September of 2003, some seventeen months post-accident, Jordan was still having spasms in his back. At the time of trial, he testified that he was having trouble sleeping because it was hard to get comfortable and that his left big toe was still numb. It was up to the jury to weigh the evidence as to the extent of Jordan's injuries. The jury was in the best position to judge Jordan's credibility, demeanor, and mannerisms while he was testifying. We find no abuse of the jury's discretion in its award of general damages.

**DECREE**

For the foregoing reasons, the judgment appealed from is affirmed at Defendant-Appellant's cost.

**AFFIRMED.**